**Radan KOVACEVIC, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–3354.

United States Court of Appeals, Sixth Circuit.

Aug. 19, 2004.

Richard A. Kulics, Birmingham, MI, for Petitioner.

Greg D. Mack, Michelle E. Gorden, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SILER, MOORE, and COLE, Circuit Judges.

## ORDER

Radan Kovacevic petitions for judicial review of an order by the Board of Immigration Appeals (BIA) which dismissed his appeal of an immigration judge's (IJ) determination that he was subject to removal despite his applications for asylum, the withholding of removal, and relief under the United Nations Convention Against Torture. The parties have waived oral argument and the panel unanimously agrees that oral argument is not needed in this case. Fed. R.App. P. 34(a).

Kovacevic is a native and citizen of the former Republic of Yugoslavia, now known as Serbia and Montenegro, who entered the United States without authorization on October 6, 2000. The Immigration and Naturalization Service (INS) initiated removal proceedings against Kovacevic alleg-ing that he had entered this country illegally. Kovacevic conceded removability and applied for asylum, the withholding of removal, and relief under the Convention Against Torture.

After a hearing, the IJ denied all of Kovacevic's applications on January 15, 2002. The BIA adopted the IJ's findings and dismissed Kovacevic's administrative appeal on February 12, 2003.

Kovacevic filed a timely petition for judicial review on March 6, 2003. On appeal, Kovacevic argues that the BIA's streamlined procedure in reviewing the IJ's decision violated his due process rights, that the IJ misinterpreted the definition of persecution, that the IJ disregarded and distorted substantial evidence supporting the asylum application, and that the IJ abused her discretion in denying his request for asylum and withholding of removal.

The resolution of an asylum request involves a two-part inquiry. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir.1998). Kovacevic must show not only that he is a refugee, but also that his application merits a favorable exercise of administrative discretion. *See id.* The IJ did not reach the discretionary step here, as Kovacevic did not meet his burden of showing that he is a refugee. A "refugee" is defined as an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *accord INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). A petition for judicial review should not be granted unless the evidence is so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir.2001).

An asylum application is also treated as an application for the withholding of removal. *Mikhailevitch,* 146 F.3d at 391. However, the burden of proving eligibility for asylum is less than the burden of proving entitlement to withholding. *Id.* Thus, the failure to show that Kovacevic is eligible for asylum will also show that he is not entitled to the withholding of removal. *See id.*

Kovacevic's challenge to the BIA's streamlined procedure on due process grounds is without merit. Kovacevic's argument was rejected by this court in *Denko v. INS,* 351 F.3d 717 (6th Cir.2003). In *Denko,* the court found that the summary affirmance rule which renders the IJ's decision the final agency order did not violate an individual's due process rights. *Id.* at 727–32. As the court has specifically rejected the constitutional argument presented by Kovacevic, there is no ground to review the BIA's decision on this issue.

■ The record does not compel the rejection of the IJ's finding that Kovacevic does not have a well-founded fear of future persecution. The State Department's country reports show that Kovacevic has no reasonable basis to fear his return to the Federal Republic of Yugoslavia. The IJ did not find that Kovacevic was entitled to a presumption of future persecution. The record supports the IJ's decision that the Federal Republic of Yugoslavia has experienced significant political improvements since Kovacevic's departure. *See Mitev v. INS,* 67 F.3d 1325, 1332 (7th Cir.1995). In reaching her decision, the IJ noted that, while in Yugoslavia, Kovacevic was able to continue his employment as a police officer; there was no evidence that Kovacevic could not relocate within the Republic of Montenegro; and the evidence did not support a finding that Kovacevic was tortured in the past or that Serbians are singled out for torture by the government.

■ The IJ's finding that Kovacevic did not present a credible claim for relief is supported by substantial evidence. The IJ's credibility findings are entitled to substantial deference. *See Berroteran–Melendez v. INS,* 955 F.2d 1251, 1256 (9th Cir.1992).

Kovacevic's claims are based on his theory that he was singled-out for mistreatment in his job as a police officer because he refused to align himself with his "pro-Milosevic" superiors and that he refused to obey his superiors' orders to beat people. Significant inconsistencies in Kovacevic's testimony, his asylum application, and the proffered documentary evidence undermine the veracity of Kovacevic's claims.

Kovacevic testified that: he was fired from his position as a police officer in Montenegro when he arrested a person who, as it turned out, worked for the police; he was transferred to the federal police force in Belgrade because of his refusal to follow his superiors' orders to beat people; and he was fired from his post in Belgrade and then discharged from his position in Montenegro because his superiors did not want him working on the police force. This testimony, however, was inconsistent with other portions of Kovacevic's testimony and the documentary evidence that Kovacevic proffered in support of his claims.

After initially stating that he was fired following an incident when he stopped and arrested an individual who worked for the police, Kovacevic indicated that he was suspended for a period of time, and that he resumed his duties as a police officer after being sanctioned and docked fifty percent of his pay for three months following his return to work. Kovacevic was not fired from his job.

While Kovacevic testified that he was transferred to a federal police post in Belgrade because of his refusal to follow his superiors' orders, the documentary evidence that Kovacevic proffered in support of his story does not support this claim. A May 2000 letter indicates that Kovacevic, along with several other individuals, was assigned to work with the Federal Ministry of Internal Affairs on a temporary, one-year basis, for the express purpose of providing assistance to the federal police brigade. The letter does not mention Kovacevic's insubordination, nor does it indicate that he alone was being punished in some way for his alleged insubordination.

Kovacevic further testified that, when he was transferred from his post in Belgrade back to Montenegro, he was fired from his job and not allowed to return to his position. This account is inconsistent with the proffered documentary evidence. A June 2000 letter states that Kovacevic was relieved from his post in Belgrade because he had been placed on extended sick leave and was unable to fulfill his duties for medical reasons.

Kovacevic's story was inconsistent in one other respect. Kovacevic's asylum application states that on more than one occasion he was "threatened and stopped by masked individuals who accosted [him]" because of his refusal to obey his superiors' orders. The application further states that because of these threats a friend advised him to leave Montenegro "for his . . . protection," and that he came to the United States for this reason. Kovacevic's verbal account during the hearing never mentioned being "threatened" or "accosted" by any individual, much less "masked" or anonymous individuals.

These discrepancies were noted by the IJ in her decision, and the IJ properly relied upon them to support her determination that Kovacevic's story was not credible. The inconsistencies relate to whether Kovacevic was treated poorly or singled-out for persecution because of his refusal to follow his superiors' orders. These factors bear directly on Kovacevic's alleged fears of persecution and torture and, accordingly, undermine his claims. *See Singh–Kaur v. INS*, 183 F.3d 1147, 1152 (9th Cir.1999). Therefore, these discrepancies support the IJ's credibility determination. *See id.* at 1151–52.

Kovacevic contends that the IJ improperly relied on the documents that he proffered in support of his claims. Kovacevic suggests that his case was prejudiced because he was not given an opportunity to comment on the documents and that it was improper for the IJ to issue a ruling based on her interpretation of the documents.

Kovacevic's assertion that he was not allowed to comment on the proffered documents is wrong. During the hearing, Kovacevic identified each of the proffered documents for the record. When asked whether the documents were the originals, Kovacevic answered that they were not, that the originals were at his home, and that he had asked his brother to fax them. Kovacevic further testified that he did not bring the original documents with him to the United States because they are "very important" to him. Kovacevic indicated that he did not want to entrust the Yugoslavian mail system with such important documents because the mail system was not that good.

Kovacevic's comments indicated what the documents represent, their significance, and how they supported his claims. Under these circumstances, Kovacevic was not deprived of a full and fair hearing by the IJ's reliance on the very evidence that Kovacevic attempted to offer to support his claims. Furthermore, the IJ declined to admit into evidence the letters and the e-mail proffered by Kovacevic in support

336

of his claims. The IJ doubted the validity and the reliability of the documents because the documents were not originals; they had not been authenticated; and although Kovacevic maintained that the documents were sent to him via facsimile transmission, there was not the typical text at the top or the bottom of the documents to indicate that the documents had been sent to him via facsimile. The IJ further noted that the proffered e-mail did not lay a foundation for the admission of the documents because, at best, it indicated that there was a problem sending the documents by facsimile transmission.

The IJ also found that Kovacevic's evidence did not establish eligibility for protection under the Convention Against Torture because Kovacevic had not established that he was more likely than not to suffer torture at the hands of the government or with the government's acquiescence.

To establish a prima facie case for protection under the Convention Against Torture, Kovacevic had to show the IJ that it was more likely than not that he would be tortured if he was removed to the Federal Republic of Yugoslavia. *See* 8 C.F.R. § 208.16(c)(2); *Ali v. Reno*, 237 F.3d 591, 596–97 (6th Cir.2001). In order to assess the risk of torture, the IJ had to consider "the possibility of future torture, including any evidence of past torture inflicted upon the applicant and evidence that the applicant is not likely to be tortured in another area of the country of removal." *Ali*, 237 F.3d at 596–97. The IJ concluded that Kovacevic did not meet his burden of showing that it is more likely than not that he will be tortured if he returns to the Federal Republic of Yugoslavia. Kovacevic did not establish that he was tortured in the past when he lived in the Federal Republic of Yugoslavia. To the contrary, the IJ concluded that Kovacevic had never

been detained, interrogated, or beaten. The State Department's country reports also indicate that it would be reasonable for Kovacevic to return to the Federal Republic of Yugoslavia. Thus, the evidence and information showing that Kovacevic can live in the Federal Republic of Yugoslavia without being harassed or harmed likewise contradict Kovacevic's claim that he is likely to be tortured if he is removed. *See* 8 C.F.R. § 208.16(c)(3)(iii).

Accordingly, Kovacevic's petition for judicial review of the BIA's decision is denied.